UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
CHAMMA K. BRANDON,  :
              Plaintiff, :
               : **OPINION AND ORDER**
v. :
               : 16 CV 5552 (VB)
MARK ROYCE, LESLIE MALIN, and JOHN :
V. WERLAU, in their official and individual :
capacities, :
              Defendants. :
----------------------------------------------------------x

Briccetti, J.:

Plaintiff Chamma K. Brandon, an inmate at Sing Sing Correctional Facility ("Sing Sing"), proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 ("Section 1983"), the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq. ("RLUIPA"), and the First and Eighth Amendments to the United States Constitution, alleging defendants violated his rights to free exercise of religion and freedom from cruel and unusual punishment.

Before the Court is defendants' motion to dismiss the complaint under Rules 12(b)(1) and 12(b)(6). (Doc. #17). For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiff's favor.

1

I.  Eid al-Adha Meal

In September 2015, Sing-Sing officials accepted a special events package for Muslim inmates and their guests to attend a celebration for Eid al-Adha, a significant Muslim holiday, scheduled to take place on September 26, 2015. Plaintiff was one of the inmates granted permission to attend the event. However, sometime before the event, plaintiff was informed that some of the invited guests would not be able to attend the celebration because the total number of attendees exceeded the capacity of the event space. Plaintiff was then told that if some of the inmates volunteered to withdraw from the event, all of the invited guests could attend. He was told the inmates who withdrew would receive a celebratory "feed-in tray" in their cells instead. (Compl. ¶ 18). Plaintiff volunteered, and his name was put on a list of inmates who were to receive a feed-in tray.

On the day of the celebration, September 26, 2015, inmate cooks began preparing the feed-in trays for delivery to those inmates who had volunteered to miss the event. However, defendant Werlau stopped the cooks on their way to deliver the trays and ordered them to throw out the trays, in compliance with an "updated" order for the event. (Compl. Ex. B).[1] This updated order stated that "[n]o [f]acility [p]repared food will leave the [e]vent [a]rea." (Id.).

On October 14, 2015, after attempts at informal resolution, plaintiff filed a grievance with the Inmate Grievance Program ("IGP") supervisor. The IGP supervisor received the grievance on October 27, 2015. On October 28, 2015, the IGP supervisor denied plaintiff's grievance as "untimely." (Compl. Ex. G). Plaintiff appealed that decision through the inmate grievance

---

[1] "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider . . . documents attached to the complaint as exhibits." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

2

process. On March 9, 2016, the IGP Central Office Review Committee upheld the previous decisions determining plaintiff's grievance was untimely. (Id. Ex. K).

II.     Lighting Issue

On November 22, 2015, defendant Royce ordered the installation of "1000-watt wide-range high intensity stadium-style light-bulbs" in plaintiff's cell block. (Compl. ¶ 37). These bulbs were kept on twenty-four hours a day, seven days a week, and caused plaintiff and a number of other inmates sleep issues.

By complaints submitted between November 28 and December 11, 2015, plaintiff and other inmates objected to the lighting, stating it prevented them from being able to sleep. Plaintiff reported for sick call three times in the month of December, and was prescribed Benadryl and Tylenol to treat his ailments.

On December 22, 2015, Royce ordered the maintenance department to replace the lights in plaintiff's cell block with lower-wattage bulbs, and the lights were replaced.

According to plaintiff, the new lights are lower in wattage but they still shine into his cell at all times, day and night.

**DISCUSSION**

I.      Legal Standard

In deciding a motion to dismiss under Rule 12(b)(1), "A case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). Once the question of jurisdiction is raised, the burden of establishing it rests on the party asserting jurisdiction. See Thomson v. Gaskill, 315 U.S. 442, 446 (1942). "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the

3

Constitution or Congress." Durant, Nichols, Houston, Hodgson, & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009). If this Court determines at any time that it lacks subject matter jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

In deciding a motion to dismiss under Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" announced by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Because plaintiff is proceeding pro se, the Court must construe his submissions liberally and "interpret them to raise the strongest arguments that they suggest." Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006) (internal citation omitted). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory

4

statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal citation omitted). Nor may the Court "invent factual allegations [plaintiff] has not pled." Id.

II. Free Exercise Claims

Defendants argue plaintiff has failed to state a claim for religious deprivation under the Free Exercise clause for three reasons: (i) plaintiff failed to exhaust his administrative remedies, (ii) any alleged religious deprivation was de minimus, and (iii) plaintiff failed to allege the personal involvement of defendants Royce and Malin.

The Court rejects all three arguments.

A. Failure to Exhaust Administrative Remedies

Defendants first contend that because the IGP supervisor rejected plaintiff's grievance as untimely, plaintiff failed to exhaust his administrative remedies and thus cannot proceed with his religious deprivation claim.

The Court disagrees.

The Prisoner Litigation Reform Act ("PLRA") states, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense under the PLRA. Jones v. Bock, 549 U.S. 199, 216 (2007). "Dismissal under Rule 12(b)(6) for failure to exhaust is thus appropriate only where nonexhaustion is apparent from the face of the complaint." Roland v. Smith, 907 F. Supp. 2d 385, 388 (S.D.N.Y. 2012).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some

5

orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 101 (2006). Thus, "'filing an untimely or otherwise procedurally defective administrative grievance or appeal' does not satisfy the PLRA's exhaustion requirement." Harrison v. Goord, 2009 WL 1605770, at *4 (S.D.N.Y. June 9, 2009) (quoting Woodford v. Ngo, 548 U.S. at 83–84).[2] In New York, the procedural rules governing grievances provide, "[a]n inmate must submit a complaint to the clerk within 21 calendar days of an alleged occurrence on an inmate grievance complaint form." 7 N.Y.C.R.R. 701.5(a)(1).

However, only those remedies that are "available" to the prisoner may be exhausted. Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016) (citing Ross v. Blake, 136 S. Ct. 1850, 1856 (2016)). Administrative remedies are considered unavailable in "three kinds of circumstances:" (i) when "an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (ii) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it;" and (iii) when "a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation." Ross v. Blake, 136 S. Ct. 1850, 1853–54 (2016).

Here, plaintiff claims he "filed" his grievance on October 14, 2015, eighteen days after he was denied the Eid al-Adha meal.[3] (Compl. ¶ 24). Yet the IGP supervisor determined plaintiff's

---

[2] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3] Plaintiff alleges he waited eighteen days to submit the grievance because he was attempting to resolve the matter informally. (Compl. ¶ 27). This is in direct compliance with the grievance system procedures. 7 N.Y.C.R.R. § 701.3(a).

6

grievance was "untimely" because the time between "the date of the incident and the date [plaintiff's] complaint was received" exceeded 21 days. (Compl. Ex. G).

Accepting plaintiff's allegations as true, plaintiff's grievance was timely. Moreover, if it took thirteen days for the grievance to travel from wherever plaintiff filed it on October 14, 2015, to the prison IGP, where it was received on October 27, 2015, that was unreasonable. This delay cut by more than half the 21 days plaintiff had to submit a grievance. A system that requires an inmate to know to submit a grievance nearly two weeks before the deadline is "opaque" and, "practically speaking, incapable of use." Ross v. Blake, 136 S. Ct. at 1853-54.

At this stage of the case, and absent a more complete record, the Court cannot conclude as a matter of law that plaintiff's grievance was untimely. If, after discovery, defendants move for summary judgment, the Court will reconsider the matter.

B.      Substantial Burden on Right to Religious Exercise

Defendants next argue "[t]he alleged deprivation of a single religious meal is a de minimus burden and thus, is not actionable under the First Amendment." (Defs.'s Br. at 7).

The Court disagrees.

"Inmates clearly retain protections afforded by the First Amendment . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citation omitted). To state a free exercise claim, plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274-75 (2d Cir. 2006).

An inmate's "right to practice his religion is, however, not absolute." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993). Corrections facilities may restrict religious exercise so long as such restrictions are "'reasonably related to legitimate penological interests.'"

O'Lone v. Estate of Shabazz, 482 U.S. at 349 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). Thus, even if plaintiff can establish defendants substantially burdened his right to religious exercise, he cannot state a free exercise claim if defendants can show "the disputed official conduct was motivated by a legitimate penological interest." Salahuddin v. Goord, 467 F.3d at 276.

Eid al-Adha is one of two major religious observances in Islam. The Second Circuit has held the prevention of inmates from participating in one meal for Eid al-Fitr—another significant Muslim holiday—may substantially burden an inmate's religious exercise in violation of the First Amendment. Ford v. McGinnis, 352 F.3d at 593-94. Therefore, at this early stage of the case and without prejudice to reconsidering the matter on a motion for summary judgment, the Court declines to dismiss the complaint on the grounds that denying plaintiff one Eid al-Adha meal is de minimus.

Accordingly, plaintiff has plausibly alleged a free exercise claim.

C. Personal Involvement of Royce and Malin

Finally, defendants argue Royce and Malin were not personally involved in the events giving rise to plaintiff's free exercise claim.

The Court disagrees.

"Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994) (citing Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "Supervisor liability under § 1983 'can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned

conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring.'" Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) (quoting Hernandez v. Keane, 341 F.3d 137, 145 (2d Cir. 2003)).

Here, plaintiff alleges Royce added the updated order—and his signature appears below it—which states, "[n]o [f]acility [p]repared food will leave the [e]vent [a]rea." (Compl. Ex. B). In addition, plaintiff alleges another inmate sent a letter to Malin the day after the event "complaining about the deprivation," but that Malin did not respond. (Compl. ¶ 22). This is what prompted plaintiff to file a formal grievance.

Thus, at this stage of the case, plaintiff has sufficiently alleged that Royce was directly involved in the alleged violation by issuing an order that seemingly contradicted the initial order that would have given plaintiff the feed-in tray. Malin, for her part, failed to remedy the wrong by, for example, ordering that plaintiff be provided with a substitute Eid al-Adha meal.

Accordingly, plaintiff has plausibly alleged Royce and Malin were personally involved in the conduct giving rise to his claims.

III. RLUIPA Claims

Defendants argue plaintiff's RLUIPA claim should be dismissed.

The Court agrees.

"RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014) (citing Washington v. Gonyea, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam)). Instead, a plaintiff may only seek injunctive or declaratory relief under RLUIPA. See Holland v. Goord, 758 F.3d at 224. Moreover, "[a]bsent any request for prospective relief to remedy ongoing

violations of federal law, a declaration that the defendants violated the plaintiff's constitutional rights in the past is barred by the Eleventh Amendment." Hill v. Chapdelaine, 2017 WL 62511, at *2 (D. Conn. Jan. 5, 2017) (citing Green v. Mansour, 474 U.S. 64, 71-73 (1985)).

Here, plaintiff seeks declarations that the individual defendants' "deliberate indifference and gross negligence violated Plaintiff's . . . statutory right to religious exercise under RLUIPA." (Compl. "Relief Requested" ¶¶ A1-3).

Because plaintiff does not seek a prospective declaration with respect to his RLUIPA claim—and even liberally construed, his RLUIPA claim relates to one particular series of events that led to an alleged religious deprivation on one occasion, making it unlikely to occur again— plaintiff's RLUIPA claim is dismissed.

IV. Eighth Amendment Claim

Defendants argue plaintiff has not plausibly alleged an Eighth Amendment claim against Royce.

The Court disagrees.

The Eighth Amendment requires prison conditions to be at least "humane." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To adequately allege an Eighth Amendment violation, an inmate must satisfy objective and subjective elements of a two-pronged test: "(1) objectively, the deprivation the inmate suffered was 'sufficiently serious that he was denied the minimal civilized measure of life's necessities,' and (2) subjectively, the defendant official acted with 'a sufficiently culpable state of mind . . . such as deliberate indifference to inmate health or safety.'" Walker v. Schult, 717 F.3d 119, 125 (2d Cir. 2013) (quoting Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001)).

Regarding the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." Walker v. Schult, 717 F.3d at 125 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)). He must allege prison officials deprived him "of his 'basic human needs' such as food, clothing, medical care, and safe and sanitary living conditions." Id. (quoting Rhodes v. Chapman, 452 U.S. at 347). When a plaintiff seeks to combine individual deprivations, the sum equates a conditions of confinement claim only if the composite conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." Wilson v. Seiter, 501 U.S. 294, 304 (1991) (stating that holding prisoners in cold cells without blankets may constitute a violation).

With respect to the subjective requirement:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This "deliberate indifference" element is equivalent to the familiar standard of "recklessness" as used in criminal law.

Phelps v. Kapnolas, 308 F.3d 180, 185-86 (2d Cir. 2002) (citation omitted).

Here, first, plaintiff has plausibly alleged that the installation of 1000-watt lightbulbs in his cell block caused plaintiff serious health problems. Specifically, he alleges he suffered from "inability to sleep, severe migraines, dizziness, among other ailments," including "extreme fatigue and hallucinat[ions] [of] 'white and black spots.'" (Compl ¶¶ 40, 42).

Second, the documents attached to plaintiff's complaint show Royce knew of that harm and yet did not remedy the situation. In particular, by letter dated December 3, 2015, addressed to Royce, one inmate wrote, "the streetlights in front of their locking location . . . are bright and this is causing them sleep deprivation." (Compl. Ex. L at 30). Yet, according to plaintiff's

complaint, Royce did not order the removal of the lights until December 22, 2015. Therefore, liberally construed, plaintiff's complaint alleges Royce subjectively knew about the risk to plaintiff's health and showed deliberate indifference by not removing the lights sooner, relocating plaintiff to another cell, or otherwise remedying the situation. (See Compl. ¶ 54).

V.  Claims Against Defendants in Their Official Capacities

Defendants are correct that plaintiff's claims for monetary damages against defendants acting in their official capacities are barred by the Eleventh Amendment. See Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993).

Accordingly, all monetary damages claims against defendants in their official capacities are dismissed; monetary claims against defendants in their individual capacities may proceed. In addition, plaintiff's claims for injunctive relief (see Compl. at "Requested Relief" ¶ B) may proceed against defendants in their official capacities.

VI.  Qualified Immunity

Defendants argue they are entitled to qualified immunity.

The Court disagrees.

"The issues on qualified immunity are: (1) whether plaintiff has shown facts making out violation of a constitutional right; (2) if so, whether that right was 'clearly established;' and (3) even if the right was 'clearly established,' whether it was 'objectively reasonable' for the officer to believe the conduct at issue was lawful." Gonzalez v. City of Schenectady, 728 F.3d 149, 154 (2d Cir. 2013) (quoting Taravella v. Town of Wolcott, 599 F.3d 129, 133–34 (2d Cir. 2010)).

Here, plaintiff has sufficiently alleged defendants violated his First and Eighth Amendment rights, which were clearly established at the time, and it was not on its face

12

reasonable for defendants to believe they could lawfully violate those rights. Again, this is an issue that may be reviewed at summary judgment after the completion of discovery.

VII.     Leave to Amend

Rule 15(a)(2) instructs that courts "should freely give leave" to amend a complaint "when justice so requires." Liberal application of Rule 15(a) is warranted with respect to pro se litigants who "should be afforded every reasonable opportunity to demonstrate that [they have] a valid claim." Matima v. Celli, 228 F.3d 68, 81 (2d Cir. 2000) (quoting Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984)). District courts "should not dismiss [pro se complaints] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (quoting Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999)).

However, leave to amend may "properly be denied for . . . 'futility of amendment.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). This is true even when plaintiff is proceeding pro se. See Martin v. Dickson, 100 F. App'x 14, 16 (2d Cir. 2004) (summary order).

Here, the central claims in plaintiff's complaint—that defendants violated his First and Eighth Amendment rights—are going forward. Plaintiff's other allegations are barred as a matter of law. As a result, allowing plaintiff to amend those claims would be futile.

The Court therefore declines to grant plaintiff leave to file an amended complaint.

## CONCLUSION

Defendants' motion to dismiss is GRANTED with respect to the RLUIPA claims and all monetary claims against defendants in their official capacities. The motion is DENIED in all other respects.

Defendants' time to file an answer to the complaint is governed by Fed. R. Civ. P. 12(a)(4).

By separate order, the Court will schedule an initial conference pursuant to Fed. R. Civ. P. 16 for the purpose of setting discovery deadlines and addressing other case management issues.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444-45 (1962).

The Clerk is instructed to terminate the motion. (Doc. #17).

Dated: June 20, 2017
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge